IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | CRIMINAL CASE NUMBER: |
| : | 1:15-CR-00454-TWT-JSA |
| ROBERT MARKS, : | |

**FINAL REPORT AND RECOMMENDATION**

Defendant was arrested on October 30, 2015 by officers of the Atlanta Police Department ("APD"). During the incident, the officers found a firearm apparently discarded by the Defendant, and he was thereafter charged in this Court with being a felon-in-possession of a firearm and with stealing a firearm. Defendant has now filed a Motion to Suppress Statements [20] and a Motion to Sever the two counts against him [19], along with a Motion to Suppress Evidence [18] that he has since withdrawn [36]. As explained below, the Court **RECOMMENDS** that Defendant's Motion to Suppress Statements [20] and Motion to Sever [19] be **DENIED**.

**FACTS**

The following facts are taken from the transcript of the evidentiary hearing on May 23, 2016 [31] ("Tr.") .

At around 10:00 pm on October 30, 2015, APD Officer Hayden Butler was driving a patrol car in the area of Ponce de Leon Avenue and Monroe Drive. *See* Tr. At 4-5. The driver's and passenger's windows were down, and Officer Butler testified that he smelled "a strong odor of burning marijuana." *Id.* at 7. He saw a man and a woman standing in a parking lot, and the man was smoking what appeared to be a brown-colored cigarette. *Id.* Officer Butler pulled over, got out of out the patrol car, and starting walking towards the couple. *Id.* The apparent marijuana odor grew stronger as he approached. *Id.* at 8. After Officer Butler announced himself as a police officer and asked that the man come over, the man instead "did like a double-take," turned to walk away, and eventually ran into an adjacent wooded lot. *Id.*

Shortly thereafter, Officer Butler caught up with the man, later identified as the Defendant, in some vines and vegetation in the lot. *Id.* at 9-10. Officer Butler handcuffed the Defendant, which Officer Butler described as being for investigatory purposes. *Id.* At this point, officers had their guns drawn, but Officer Butler believes that all officers would have holstered their weapons after Defendant was handcuffed. Tr. at 34. Afterwards, the officers found a gun, one of Defendant's shoes, and a hat in the vegetation area close by to where Defendant had fallen. *Id.* at 11. Gov't Ex. 1. This process took five to ten minutes. Tr. at 26. Officer Butler indicated he could not know whether anything else was said to

Defendant during this time, although no party introduced evidence of any other statements or conversations. *Id.* at 31. As Officer Butler brought Defendant out of the vegetation, he said to Defendant that "I needed him to help me out," which Officer Butler explained meant that he needed the Defendant to use more effort in walking because of the slipperiness and deepness of the ditch. *Id.* at 26.

The officers then secured Defendant, sat him down on the ground in handcuffs by the patrol car, and Officer Butler read Defendant his Miranda rights from a card, which was admitted as Gov't Ex. 2. *Id.* at 27-30. A video recording that captures the advisement of *Miranda* rights, the Defendant's verbal waiver of those rights, and the ensuing questions and answers, was admitted as Exhibit 3. At some point during the conversation, the Defendant asked about his female companion, and Officer Butler responded, "Like I said like we discussed, as long as she was cooperative with us, I was going to be reasonable with you ok and we didn't put that charge on her, instead we just let her go ahead and go." Ex. 3.

## DISCUSSION

**A.    Defendant's Motion To Suppress Statements Should be Denied**

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a suspect who is in custody must be advised of his right to remain silent and of his right to the assistance of counsel prior to any interrogation by law enforcement. The Government has the burden to show the knowing and intelligent nature of a

*Miranda* waiver. *Id*. at 475. The Supreme Court instructs courts to look for two things:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quotation marks and citation omitted).

Second, the Government must also show that the Defendant's statements were made voluntarily. *See Jackson v. Denno*, 378 U.S. 368 (1964). Determining whether a statement is voluntary depends on whether, under all of the surrounding circumstances, the statement was the product of the accused's "free and rational" choice. *United States v. Jones*, 32 F.3d 1512, 1516 (1994); *see Arizona v. Fulminate*, 499 U.S. 279, 285–88 (1991). The Eleventh Circuit has stated:

> Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally

insufficient to preclude  free choice.

*Jones*, 32 F.3d at 1517 (quotation omitted).[1]

It is undisputed that Officer Butler read Defendant his *Miranda* rights and that Defendant thereafter stated that he would speak to the officers.  Defendant, rather, argues that the Government has not sustained its burden to prove that he waived his rights or uttered his substantive inculpatory statements voluntarily.[2]

---

[1] In considering the Motion to Suppress Statements, the Court only addresses the voluntariness of Defendant's statements and his *Miranda* waiver, because these are the only issues briefed by Defendant in his post-hearing brief.  For example, the Defendant does not argue that the statements occurred during and therefore resulted from an illegal seizure.  Thus, while the Government includes argument as to the existence of probable cause and/or reasonable suspicion to justify the seizure, the Court will not address this issue because it is not relied upon by Defendant as a ground for suppression.

[2] The Government argues that, even though Officer Butler furnished *Miranda* warnings, he was not required to do so because at that point Defendant was still subject only to an investigative detention that did not trigger *Miranda*. *See United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004).  Whether a defendant is "in custody" within the meaning of *Miranda* turns on whether there is a formal arrest or a restraint on freedom of movement of a degree associated with a formal arrest.  *See United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). This is close question on the facts of this case, and it appears to be an entirely academic one at that.  After all, it is undisputed that *Miranda* warnings were furnished and that the Defendant voiced a waiver.  And the voluntariness or lack of voluntariness of that waiver appears to turn on the same basic circumstances as that of Defendant's substantive statements themselves.  Because regardless of the applicability of *Miranda*, the Government still must prove the voluntariness of Defendant's statements, resolving the status of Defendant's seizure would seem to have no bearing on the ultimate resolution of the motion.  For these reasons–and because it presents an otherwise close question on the facts of this case–it is most efficient to assume that Defendant was arrested and that *Miranda* applied.

The Court in assessing this question has considered the testimony of Officer Butler–which was not rebutted by any contrary evidence–and has also reviewed the videotaped recording of the confession introduced as Exhibit 3.  The Defendant appeared to be calm, spoke clearly and appropriately, and appeared to understand what was happening and what Officer Butler and others were saying.  It also weighs in favor of voluntariness that Defendant had been specifically advised that he had the right to remain silent and right to an attorney, but yet chose to speak anyway.  The encounter was also very brief, as the questioning lasted on the order of a few minutes at most.

While Defendant was restrained with several officers standing above him, the officers did not have any weapons drawn during the questioning or otherwise appear to engage in any physical or verbal intimidation or threats.  Courts have found voluntariness in similar circumstances, even where a Defendant was faced with multiple armed officers or handcuffed.  *See Shriner v. Wainwright*, 715 F.2d 1452 (11th Cir. 1983) (intense questioning for five hours in a small room while handcuffed was not coercive); *United States v. Solis*, 299 F.3d 420, 438 (5th Cir. 2002) (questioning in the presence of seven armed officers was not in itself coercive).

Defendant argues that Officer Butler may have–even unintentionally–suggested that Defendant needed to speak to the officers in order

to help himself or his female companion.  Defendant first points to Officer Butler's testimony that he asked Defendant to "help me out" by putting more effort into walking out of the heavy vegetation.  Tr. at 26.  On its face, however, this statement had nothing to do with any questioning of the Defendant, or suggestion that the Defendant help himself out *by confessing,* and the Court sees no basis on this record to speculate that the Defendant somehow misunderstood the conversation otherwise.  In any event, the Eleventh Circuit has found that the police do not render a statement involuntary by simply noting–without otherwise promising leniency–that it would be "helpful" for the defendant to provide information.  *See United States v. Vera*, 701 F.2d 1349, 1364-65 (11th Cir. 1983).

   Here, the recording reflects that Officer Butler informed the Defendant during the questioning that his cooperation would be reported to the District Attorney's Office, that the officers would have to charge him with illegal possession of the firearm if they discovered he was a felon, that the District Attorney's Office may consider his cooperation in determining whether to persist in that charge or not, and that such a decision was entirely up to the District Attorney's Office, not the officers.  Such assurances that cooperation would be reported to prosecutors, while disclaiming any promises of leniency or even of authority to make decisions about leniency, have been repeatedly found not to vitiate voluntariness.  *See, e.g., United States v. Jacks*, 634 F.2d 390, 393 (8th Cir.

1981).  Notably, here, the Defendant continued to make statements even after Officer Butler expressly told him that all decisions about leniency would be within the province of prosecutors.  And the Defendant did not otherwise appear surprised or concerned that this explanation contradicted some other promise he interpreted Officer Butler or any other officer to have previously made.

As to Defendant's female companion, neither the testimony nor the recording reflects any promise that her fate would turn on whether Defendant cooperated.  To the contrary, what Officer Butler said on the recording was something along the line of, "as long as she was cooperative with us, I was going to be reasonable with you ok and we didn't put that charge on her, instead we just let her go ahead and go." Ex. 3 at approx. 1:57.  In other words, according to Officer Butler, the woman's fate depended on whether *she* would cooperate, not necessarily what Defendant did.  Notably, even after having been told that the woman had already been set free, Defendant continued to talk to the police.

Nevertheless, the Eleventh Circuit has specifically found that police did not undermine the voluntariness of an arrestee's confession, even where they directly told the arrestee that his girlfriend would likely face charges if he declined responsibility.  See *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001).  Material to the Court of Appeals' determination in *Thompson* was that sufficient evidence existed to at least charge the girlfriend already.  See *id.* ("[W]hether a

threat to prosecute a third party was coercive depends upon whether the state had probable cause to believe that the third party had committed a crime at the time that the threat was made . . .") *Id.* That appears to apply here too, where the police found Defendant and his companion smoking apparent marijuana, and the companion was the one actually holding the apparent joint as the officers approached. *See* Tr. at 7, 20.

Thus, the totality of the circumstances show Defendant's statements and *Miranda* waiver to have been offered voluntarily. Defendant's Motion to Suppress Statements should be **DENIED**.

### B. Defendant's Motion to Sever Should Be Denied

Rule 8(a) of the Federal Rules of Criminal Procedure provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

*See, e.g., United States v. Gabay*, 923 F.2d 1536 (11th Cir. 1991) (it was proper to join for trial a bond jumping offense its underlying substantive offense because the two offenses could be deemed to be "connected together.")

Rule 14 of the Federal Rules of Criminal Procedure grants a court discretionary authority to order a separate trial of counts if it appears that the

defendant is prejudiced by their joinder, even if the joinder is otherwise proper under Rule 8(a).  However, "[m]ore than some prejudice must be shown; the [defendant] must demonstrate that he received an unfair trial and suffered compelling prejudice." *United States v. Walser*, 3 F.3d 380, 386 (11th Cir. 1993). Severance is not required where a cautionary instruction may cure the prejudice. *Id.* at 387.

It is undisputed–and otherwise obvious–that joinder was proper here under Rule 8(a).  The Defendant's possession of the same firearm is the subject of both counts, and therefore clearly are "connected together".  Defendant's argument, rather, is that he would face prejudice in defending against the theft charge if the jury were also to hear evidence of his alleged prior felony convictions.  But the Eleventh Circuit has repeatedly affirmed denials of severance, where charges of firearm possession by a convicted felon are joined with other offenses.  *See, e.g., United States v. Mickens*, 408 Fed. Appx. 253, 257 (11th Cir. 2001).

First, proving the existence of a prior felony conviction does not require or generally permit the introduction of aggravating evidence as to the circumstances of the underlying crime.[3]  Indeed, according to the Indictment, the majority of

---

[3] In fact, although the Court here makes no assumptions as to how this fact will be proven at trial in this case, the overwhelmingly typical practice is for a stipulation to be offered that may not even identify the specific nature of the prior felony.

Defendant's prior felonies are of a non-violent and financial nature, such as shoplifting and theft by receiving, which do not yield the same risk of prejudice as convictions for murder, rape, child exploitation, and the like.  Second, any prejudice in these cases can generally be addressed through jury instructions, which could make clear that evidence of Defendant's criminal record only relates to the particular crime of illegal firearm possession.  Indeed, standard cautionary instructions in this district expressly direct the jury to consider each count separately.  Third, it is hardly clear that evidence of Defendant's criminal past would be irrelevant to the alleged theft charge.  Defendant's inability to acquire a firearm through lawful means could be an obvious motive to instead acquire one by theft.  In all of these circumstances, the Court finds that severance of this properly joined case is unwarranted.

## CONCLUSION

Defendant's Motion to Sever [19] and to Suppress Statements [20] should be **DENIED**.  This case is **READY FOR TRIAL**.

**IT IS SO ORDERED** this 24th day of August, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE